**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EBERSPAECHER NORTH
AMERICA, INC.,

       Plaintiff/Counter-Defendant,

v.                                                         Case No. 12-11045

NELSON GLOBAL PRODUCTS, INC.,

       Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S**
**"MOTION FOR PARTIAL SUMMARY JUDGMENT"**

Before the court is Plaintiff Eberspaecher North America Inc.'s ("ENA's") motion

for partial summary judgment on its breach-of-contract claim against Defendant Nelson

Global Products Inc. ("Nelson").  The motion has been fully briefed, and the court held a

motion hearing on August 15, 2012.  For the reasons that follow, the court will deny the

motion.

**I.  BACKGROUND**

Plaintiff is a Tier-1 automotive supplier that provides exhaust systems to original

equipment manufacturers ("OEMs") including General Motors, Mercedes, and BMW.

(Montean Aff. ¶ 2, Dkt. # 11; Dougald Aff. ¶ 4, Dkt. # 15-3.)  Defendant provides parts

like outlet, center muffler inlet, intermediate, and tail pipes to Plaintiff for use in

manufacturing its exhaust systems.  (Montean Aff. ¶ 2; Dougald Aff. ¶ 4.)

The supply relationship between Plaintiff and Defendant is governed by a series

of Purchase Orders executed by the parties at various times from 2008 to 2011.

(Motean Aff. ¶ 2; Dougald Aff. ¶¶ 6-7; *see* Purchase Orders, Dkt. # 44 [hereinafter

POs].)[1]  Each Purchase Order, which incorporates by reference the 2007 or 2011

version of the "Eberspaecher North America Purchase Order Terms and Conditions,"

(*see* 2007 ENA Purchase Order Terms & Conditions, Dkt. # 34-2 [hereinafter 2007 ENA

T&C]; 2011 ENA Purchase Order Terms & Conditions, Dkt. # 34-3 [hereinafter 2011

ENA T&C]), specifies a part number and the price Plaintiff would pay for that part, but

does not contain a quantity term beyond a declaration that "[t]his Purchase Order is a

Requirements Contract," (*e.g.*, PO 416019721, at 3).  Once a Purchase Order was in

place, Plaintiff would periodically issue releases to Defendant requesting shipment of a

designated quantity of a given part on a particular date.  (Montean Aff. ¶ 3; Dougald Aff.

¶ 8.)  The Purchase Orders then required Plaintiff to pay Defendant in full within either

45 or 60 days of delivery.  (*See, e.g.*, PO 416023006, at 1; PO 416021676, at 1.)

Although several of the Purchase Orders appear open-ended as to their termination

date, (*see, e.g.*, PO 416021676 (containing "[v]alidity end" date of "12/31/9999")), the

Terms and Conditions state that they are valid over the life of the vehicle program for

which the parts are manufactured, (*see* 2007 ENA T&C § 3; 2011 ENA T&C § 4), and

Plaintiff alleges that all relevant Purchase Orders are still in effect, (Montean Aff. ¶ 4).

        Sometime in 2011, Defendant realized that it was losing money on several of the

parts it produces for Plaintiff.  (Dougald Aff. ¶¶ 9, 13.)  Defendant alleges that its losses

_____

        [1]At oral argument, Plaintiff confirmed that it has moved for summary judgment as
to all of the Purchase Orders that remain at issue in this case, which are contained in its
Corrected Exhibit 1, docketed as ECF number 44.  (*See* Pl.'s Reply Supp. Mot. Partial
Summ. J. 5 n.6, Dkt. # 45.)  The court cites individual purchase orders by the "Purchase
Order Number" appearing at the upper right corner on the first page of each Purchase
Order.

were exacerbated by Plaintiff's repeated failure to pay invoices on time.  (*Id.* ¶ 10.)  On

November 23, 2011, Defendant provided Plaintiff a list of price increases on twenty

parts that it planned to implement on January 1, 2012.  (*Id.* ¶ 16, Ex. B.)  Plaintiff and

Defendant discussed the issue at a meeting on January 4, 2012, but Plaintiff was not

receptive to Defendant's request for a price adjustment.  (*Id.* ¶ 17.)  On February 13,

2012, Defendant sent Plaintiff a letter indicating that it would stop shipment of parts to

Plaintiff on April 1, 2012, unless Plaintiff agreed to the price increase.  (2/3/12 Letter,

Dkt. # 8-7.)

Plaintiff initiated this suit on March 8, 2012, claiming that Defendant's letter

constituted an anticipatory breach of contract and seeking an injunction requiring

Defendant to continue supplying parts at the prices stated in the Purchase Orders.  The

court granted Plaintiff's request for a preliminary injunction preventing Defendant from

stopping parts shipments, ordering that Plaintiff pay Defendant in accordance with the

Purchase Orders, but requiring Plaintiff to fund an escrow account with the additional

amount that would be owed for parts delivered if Defendant's proposed price increases

were in effect.  Plaintiff then filed the instant motion for partial summary judgment as to

Defendant's liability on the breach-of-contract claim.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when

"the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When

deciding a motion for summary judgment, the court "is not to 'weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

3

trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting *Anderson*, 477 U.S. at 251-52). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may

4

carry its burden by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact."  *Id.* 56(c)(1)(B).  "The court must view the evidence in the

light most favorable to the non-moving party, drawing all reasonable inferences in that

party's favor."  *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

### III.  DISCUSSION

In its motion, Plaintiff asks the court to hold that the relevant Purchase Orders

are valid, enforceable contracts, and Defendant's refusal to ship parts at the prices

designated therein constitutes breach.  Defendant attempts to refute the first of these

assertions by contending that the Purchase Orders: (1) contain no enforceable quantity

term; and (2) lack mutuality of obligation because Plaintiff could terminate them at any

time and for any reason.  Defendant also avers that, even if the Purchase Orders are

valid contracts: (3) the Purchase Orders are for an indefinite duration and thus

terminable at will; and (4) Defendant is excused from performance due to Plaintiff's prior

breach.  The court considers each of Defendant's arguments in turn.

### A.  Statute of Frauds

The bulk of the parties' briefs address whether the Purchase Orders, in

conjunction with the Terms and Conditions, obligate Plaintiff to issue releases to

Defendant in accordance with its requirements for parts.  If so, as Plaintiff argues, the

Purchase Orders are enforceable requirements contracts under which Plaintiff must

order and Defendant must supply Plaintiff's "actual . . . requirements as may occur in

good faith" under the terms and for the duration of the contracts.  Mich. Comp. Laws

§ 440.2306.  However, Defendant asserts that, because neither the Purchase Orders

5

nor the Terms and Conditions contain a promise by Plaintiff "'to obtain his required goods or services exclusively from the seller,'" they are not true requirements contracts. *Acemco, Inc. v. Olympic Steel Lafayette, Inc.*, No. 256638, 2005 WL 2810716, at *8 (Mich. Ct. App. Oct. 27, 2005) (unpublished per curiam opinion) (quoting *Propane Indus., Inc v. Gen. Motors Corp.*, 429 F. Supp. 214, 218 (W.D. Mo. 1977)).  Should this interpretation prevail, Defendant avers that it has no obligation to provide parts unless and until it receives and accepts a release requesting shipment of a specific quantity.

Defendant characterizes this dispute as a question of whether the Purchase Orders satisfy the statute of frauds, which does not allow for the enforcement of a contract for the sale of $1000 or more of goods beyond the quantity shown in a "writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought."  Mich. Comp. Laws § 440.2201(1).  Thus, the court must begin by looking to language of the Purchase Orders and the Terms and Conditions to determine whether they contain a valid quantity term.

All but one of the Purchase Orders state "[t]his Purchase Order is a Requirements Contract."  The Terms and Conditions further explain the meaning of this provision:

> [T]his Order is a requirements contract under which Seller is required to supply Buyer's requirements which shall be defined as those quantities ordered by Buyer from time to time, as evidenced by written releases issued by the Buyer from time to time, but not exceeding 20% (or such other quoted amount provided to seller) above the quoted volume/capacity requirements provided to Seller.  Buyer's requirements under this Order are determined by the needs of Buyer's customers and such needs may change from time-to-time.   Any projected or estimated volumes provided by Buyer to Seller (including forecasted volumes in any requests for quotation) in connection

6

with this Order are for planning purposes only and do not constitute a commitment or obligation to purchase a specified quantity.

(2007 ENA T&C § 2(c); *accord* 2011 ENA T&C § 2(c).)  Additionally, the Terms and

Conditions provide:

> Buyer will have no obligation or liability for Seller's production arrangements beyond the quantity required by, or in advance of the time required by Buyer's delivery schedule.  If this Order specifies that deliveries are to be made in accordance with Buyer's releases, Seller will neither produce any Goods, nor procure raw materials, nor ship any Goods, except to the extent authorized by Buyer's written releases.  Quantities noted in this Order as "planning" or with words of similar meaning are for Seller's planning purposes only and do not constitute a commitment by Buyer to purchase such quantities.

(2007 ENA T&C § 2(b); *accord* 2011 ENA T&C § 2(b).)

Plaintiff alleges that the Purchase Orders' and Terms and Conditions' designation of the parties' agreement as a "requirements contract" is sufficient to create the requisite obligation to purchase from Defendant its "actual . . . requirements as may occur in good faith."  Mich. Comp. Laws § 440.2306.  On this view, the references to releases in the Terms and Conditions simply specify the method by which Plaintiff would communicate its requirements to Defendant.  *See Metal Partners, LLC v. L & W Corp.*, No. 06-14799, 2009 WL 3271266, at *6 (E.D. Mich. Oct. 13, 2009) (finding enforceable a supply agreement under which supplier agreed "it will sell and deliver" steel "to meet Buyer's requirements for the steel in quantities as communicated from time to time by buyers in purchase orders and/or material releases").  Plaintiff maintains that this interpretation is bolstered by the Terms and Conditions' statement that "Buyer's requirements under this Order are determined by the needs of Buyer's customers," (2007 ENA T&C § 2(c); *accord* 2011 ENA T&C § 2(c)), which implies that Plaintiff

7

intended to purchase from Defendant the number of parts necessary to fulfill orders from its customers.[2]

Defendant, on the other hand, does not consider dispositive the fact that the label "requirements contract" is affixed to the Purchase Orders.  *See Ralph Const., Inc. v. United States*, 4 Cl. Ct. 727, 731 (1984) (noting that, "[n]otwithstanding that the contract says, 'This is a requirements contract . . . [,]" court is not bound to so interpret it if "it contains none of the elements necessary to that result"); *Propane Indus.*, 429 F. Supp. at 219-20 ("A promise to purchase exclusively from plaintiff cannot be implied solely from use of the terms 'requirement' and 'as required' because 'requirement' can mean either 'all needed by defendant for the Fairfax plant' or only 'all desired by defendant from plaintiff.'  The word 'requirements' is not a word of art having the meaning attributed to it by the defendant." (internal quotation marks and alterations omitted)). Rather, Defendant emphasizes that the Terms and Conditions "define[] [Buyer's requirements] as those quantities ordered by Buyer from time to time, as evidenced by written releases issued by the Buyer from time to time."  (2007 ENA T&C § 2(c); 2011 ENA T&C § 2(c).)  Since they confine Plaintiff's obligation to purchase parts to only

---

[2]Defendant takes issue with Plaintiff's purported reliance on the needs of its OEM customers, presenting data that it claims shows Plaintiff has ordered at least some parts in numbers that exceed its customer's demand.  (*See* Dougald Decl. ¶¶ 4-8, Ex. A, Dkt. # 38-2.)  If true, this allegation would support a claim that Plaintiff breached the Purchase Orders by not ordering its good-faith requirements in accordance with section 440.2306, not an argument that the Purchase Orders are themselves invalid contracts. Moreover, courts considering such claims based on a buyer's request for goods exceeding its requirements have held that a contract is enforceable *up to* a buyer's actual requirements.  *See, e.g.*, *Mass. Gas & Elec. Light Supply Corp. v. V-M Corp.*, 387 F.2d 605, 607 (1st Cir. 1967).  This premise is unhelpful to Defendant's claim that it should not be required to supply *any* of Plaintiff's requirements.

8

those quantities ordered in subsequent releases, Defendant contends, the Purchase Orders themselves contain no enforceable quantity and thus fail as contracts.

Defendant's argument notwithstanding, the repeated references to Plaintiff's "requirements" in the Purchase Orders and Terms and Conditions is sufficient to satisfy the statute of frauds.  Under Michigan law, a quantity term must appear in writing in order to satisfy the statute of frauds, *Lorenz Supply Co. v. Am. Standard, Inc.*, 358 N.W.2d 845, 846-47 (Mich. 1984), but "[o]nce a quantity term is found to exist in the agreement, the agreement need not fail because the quantity term is not precise," *Gest v. Frost* (*In re Estate of Frost*), 344 N.W.2d 331, 334 (Mich. Ct. App. 1983).  If a quantity term is sufficient to satisfy the purpose of the statute of frauds—to ensure that the parties did in fact have an agreement—then parol evidence may be adduced to explain or complete that term.  *Id.*

Granted, the Michigan Court of Appeals has applied this principle with mixed, and sometimes contradictory, results.  *Compare Great N. Packaging, Inc. v. Gen. Tire & Rubber Co.*, 399 N.W.2d 408, 413 (Mich. Ct. App. 1986) ("[T]he term 'blanket order' expresses a quantity term, albeit an imprecise one."), *and Frost*, 344 N.W.2d at 332 (determining that contract for sale of "all wood sawable" on parcel of land contained sufficient quantity term), *with Acemco*, 2005 WL 2810716, at *1 (invalidating under state of frauds a writing that stated "[d]uring the term of this Agreement, the Seller agrees to sell to the Buyer such quantities of the Products as the Buyer may specify in its purchase orders, which the Buyer may deliver at its discretion."), *and Dedoes Indus., Inc. v. Target Steel, Inc.*, No. 254413, 2005 WL 1224700, at *2 (finding no valid quantity term in price quote stating that supplier "would satisfy [buyer's] steel needs" for three

9

years), *and Ace Concrete Prods. Co. v. Charles J. Rogers Constr. Co.*, 245 N.W.2d
353, 354 (Mich. Ct. App. 1976) (holding that statute of frauds not satisfied by writing that
referenced specific construction contract and contained "price quote on concrete for the
above job").

        However, in none of the cases finding the lack of an enforceable quantity term
did the contract explicitly require the seller "to supply Buyer's requirements," as the
Terms and Conditions do here.  (2007 ENA T&C § 2(c); *accord* 2011 ENA T&C § 2(c).)
The UCC is clear that "a contract for output or requirements is not too indefinite," Mich.
Comp. Laws § 440.2306 cmt. n.2, and "[a] requirements or output term of a contract,
although general in language, nonetheless is, *if stated in the writing*, specific as to
quantity, and in compliance with § 2-201," *Lorenz Supply*, 358 N.W.2d at 847.  The
Terms and Conditions clearly contain a quantity term of "Buyer's requirements," and this
is precise enough to satisfy the statute of frauds.  *Accord Johnson Controls, Inc. v. TRW
Vehicle Safety Sys., Inc.*, 491 F. Supp. 2d 707, 716 (E.D. Mich. 2007) (finding reasoning
of cases like *Great Northern* and *Frost* better reconcile "the statute of frauds' purpose to
provide a basis for believing a contract exists" with "the UCC's other substantive goals
of liberally incorporating trade usage, custom and practice, course of dealing, and
course of performance into parties' agreements in fact" than cases like *Ace Concrete*,
*Acemco*, and *Dedoes*).

### B.  Mutuality of Obligation

        Just because the Purchase Orders satisfy the statute of frauds, however, does
not necessarily mean they are enforceable contracts.  For while the writing may be
adequate to confirm an agreement exists, that agreement could still fail for lack of

consideration if, as Defendant urges, it does not obligate Plaintiff to buy its good-faith requirements from Defendant.

The textual argument Defendant advances in support of its position has found some purchase in this circuit, primarily based upon the Sixth Circuit's unpublished opinion in *Advanced Plastics Corp. v. White Consolidated Industries, Inc.*, 47 F.3d 1167 (6th Cir. 1995) (unpublished table decision).  There, the court of appeals decided that, under Michigan law, the parties' blanket purchase order was not a requirements contract when it stated that "Seller agrees to furnish Buyer's requirements for the goods or services covered by this Purchase Order *to the extent of and in accordance with* . . . Buyer's written instructions."  *Id.* at *2.  This term, when considered alongside language that "Buyer shall have no obligation to honor invoices for goods or services fabricated, rendered, or delivered other than according to the . . . written instructions of Buyer" and "Buyer shall be entitled to make other purchases at its discretion in order to assure its production operations and maintain reasonable alternative sources of supply," led the court of appeals to conclude that the blanket purchase order "clearly demonstrates that the parties intended for [the buyer] to purchase quantities of parts only according to its releases, and not according to its requirements."  *Id.*  Several district courts in this circuit have read this holding to foreclose the possibility that supply arrangements like that laid out in the Purchase Orders is not premised on a requirements contract.  *See*

11

*Aleris Aluminum Can. L.P. v. Valeo, Inc.*, 718 F. Supp. 2d 825, 832-33 (E.D. Mich. 2010); *Harris Thomas Indus., Inc. v. ZF Lemforder Corp.*, No. 3:06CV190, 2007 WL 3071676, at *3 (S.D. Ohio Oct. 19, 2007).[3]

So, *Advanced Plastics* and its progeny reveal that there may be some uncertainty as to Plaintiff's obligations under the Terms and Conditions of the Purchase Orders, despite their reference to "Buyer's requirements."  Fortunately, the UCC's parol evidence rule allows the Terms and Conditions to be "explained or supplemented" by "course of dealing or usage of trade" or by "course of performance."  Mich. Comp. Laws § 440.2202.  Normally, the court may not take parol evidence into account absent a determination that the parties' written contract is ambiguous.  This finding is not, however, a condition precedent to the consideration of course-of-dealing, usage-of-trade, and course-of-performance evidence under the UCC.  Mich. Comp. Laws § 440.2202 cmt. n.1(c).  Such evidence may be helpful in clarifying what is meant by the juxtaposition of the otherwise clear references to "Buyer's requirements" with a definition of requirements as "those quantities ordered by Buyer from time to time." (2007 ENA T&C § 2(c); 2011 ENA T&C § 2(c).)  *See Metal One Am., Inc. v. Ctr. Mfg., Inc.*, No. 1:04-CV-431, 2005 WL 1657128, at *5 (W.D. Mich. July 14, 2005) (finding course of performance established parties had requirements contract).

---

[3]Defendant's citation of and reliance on *Johnson Electric North America v. CRH North America, Inc.*, No. 10-13184, 2011 WL 6016527 (Dec. 2, 2011), in this context and others, is inappropriate, as that opinion has been vacated, *see Johnson Elec. N. Am., Inc. v. CRH N. Am., Inc.*, No. 2:10-cv-13184-VAR-MKM (E.D. Mich. Mar. 9, 2012) (stipulated order vacating judgment).  The court does not consider it viable authority.

12

It appears from the record on summary judgment that both parties have course-of-dealing, usage-of-trade, and course-of-performance evidence favorable to their interpretations.  Statements in the affidavit of Plaintiff's representative John Montean suggests that Plaintiff would be able to prove that it procured its parts requirements exclusively from Defendant, which would tend to support the view that the parties had a requirements contract.[4]  (*See* Montean Aff. ¶ 7 ("It would require a minimum of approximately 20 weeks for ENA to find an alternative supplier.").)  For its part, Defendant offers other comments made by Montean during his deposition tending to support their reading of the Terms and Conditions.  (*See, e.g.*, Montean Dep. 16:23-17:3, Mar. 31, 2012, Dkt. # 38-3 ("A requirements contract is basically a contract that is for requirements that are sent out to the vendors. This is an automotive term used by automotive vendors. It's basically not a set requirement of parts to be shipped to, and it's based on releases sent out to the supplier.").)  As the resolution of this issue is a fact question, summary judgment as to the enforceability of the Purchase Orders cannot be granted to either party.[5]

---

[4]Plaintiff correctly points out that Michigan law is unclear as to whether exclusivity is a mandatory characteristic of a binding requirements contract.  *See GRM Corp. v. Miniature Precision Components, Inc.*, No. 06-15231-BC, 2008 WL 82224, at *6 (E.D. Mich. Jan. 8, 2008) (comparing *Acemco*, 2005 WL 2810716, at *8 (citing definition of requirements contract mandating exclusivity), with *Plastech Eng'g Prods. v. Grand Haven Plastics, Inc.*, No. 252532, 2005 WL 736519, at *7 (Mich. Ct. App. 2005) (unpublished per curiam decision) (stating section 440.2306 applies to both exclusive and nonexclusive requirements contracts)).  Nevertheless, exclusivity could be a factor in determining whether a requirements contract exists.

[5]Defendant also argues that the Purchase Orders lack mutuality because Plaintiff has the unilateral right to terminate them at any time and for any reason, even when there are releases pending with Defendant.  (*See* 2007 ENA T&C §§ 11, 32; 2011 ENA T&C §§ 12, 34.)  Yet, Defendant simply offers no support for its contention that a

### C.  Duration of the Purchase Orders

Defendant also attempts to win the day by portraying the Purchase Orders as contracts of indefinite duration that it was allowed to terminate at any time upon reasonable notice.  *See* Mich. Comp. Laws § 440.2309 ("Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.").  This contention is squarely foreclosed by the Terms and Conditions, which prohibit Defendant from terminating a Purchase Order during the life of the OEM vehicle program for which the subject part is used:

> [T]he term of this Order (the "Term") commences on the date set forth on the Order and continues through the end of the vehicle platform(s) for which such boods are supplied, including any extensions thereof. Seller agrees that it will not terminate this order before the end of the vehicle platform.

(2007 ENA T&C § 3; *accord* 2011 ENA T&C § 4.)  Even if, as Defendant argues, a contract for the life of a part or program is of indefinite duration, the parties "otherwise agreed" under section 440.2309 to limit Defendant's right to terminate the Purchase Orders during that time frame.  Defendant cites no legal authority or factual circumstance that would allow it to supercede this clear contractual directive.

---

termination-for-convenience clause evinces a lack of consideration, provided that the parties had an otherwise enforceable requirements contract. *See Aleris*, 718 F. Supp. 2d at 827 (holding contract invalid due to lack of quantity term without reference to buyer's unilateral termination rights).  Confusingly, Defendant cites in its response several cases in which a court *upheld* a buyer's exercise of its termination rights under such clauses.  *See In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 4105714, at *3 (Bankr. S.D.N.Y. Nov. 14, 2007); *Q.C. Onics Ventures, LP v. Johnson Controls, Inc.*, No. 1-04-CV-138-TS, 2006 WL 1722365, at *7-10 (N.D. Ind. June 21, 2006).  These decisions have no bearing on this case, where Defendant does not claim—nor do the parties' agreements contain—its own right to terminate the Purchase Orders for its convenience.

14

### D.  Plaintiff's Material Breach

Finally, Defendant avers that it should be excused from performance because Plaintiff has materially breached the purchase orders by failing to pay invoices on time. Defendant alleges that "[o]f the nearly *1600* invoices issued for the parts at issue and that have become due, ENA has paid only one on time, even after repeated Nelson complaints," (Def.'s Resp. 17 (record citation omitted)); *see* Whipp Decl. Ex. A., Dkt. # 38-4), and nearly 40% of Defendant's account receivables from Plaintiff from August 1, 2011, through March 28, 2012, were more than thirty days past due, (Dougald Aff. ¶ 10).  According to Defendant, these chronic late payments have increased "both the financing and administrative costs associated with supplying ENA."  (*Id.* ¶ 11.)  When questioned about these allegations, Plaintiff's representative indicated that at least some of these delays could be explained by Defendant's failure to format its invoices in accordance with Plaintiff's billing specifications.  (*See* Thumlert Dep. 7:4-24, 14:6-15:22, Mar. 31, 2012, Dkt. # 38-6.)

Defendant is correct that the party "who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform."  *Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311, 316 (Mich. 1949) (internal quotation marks omitted).  While a "complete failure of consideration" may excuse performance, *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 343 (Mich. 1964), the late payment, or even non-payment, of some invoices normally would not excuse Defendant from its obligation to perform the contract, as any such breach would not "effect[] such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible," *id.*; *see*

15

*Coupled Prods. LLC v. Component Bar Prods., Inc.*, No. 09-12081, 2012 WL 954646, at
*3 (E.D. Mich. Mar. 21, 2012) ("Courts have held that failure to timely meet payment
does not constitute a substantial breach." (citing *Baith v. Knapp-Stiles, Inc.*, 156 N.W.2d
575 (Mich. 1968))).  Here, however, Defendant has presented evidence that Plaintiff's
late payment has been a pervasive and chronic problem.  Under these circumstances,
Defendant has created a genuine issue of material fact as to whether Plaintiff committed
a prior substantial breach, which also makes summary judgment as to liability
inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, it is ordered that Plaintiff's "Motion for Partial
Summary Judgment" [Dkt. # 36] is DENIED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 23, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 23, 2012, by electronic and/or ordinary mail.

 s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522